1  Lee D. Winston
   lwinston@winstoncooks.com
2  Roderick T. Cooks
   rcooks@winstoncooks.com
3  Winston Cooks, LLC
   505 20th Street North
4  Suite#815
   Birmingham, AL 35203
5  Telephone:    (205) 502-0970
   Facsimile:    (205) 278-5876
6
   Jay Greene
7  jay@jaygreenelawfirm.com
   The Greene Law Firm
8  595 Market Street
   Suite 680
9  San Francisco, CA 94105
   Telephone:    (415) 905-0215
10
   Attorneys for the Plaintiffs and the Proposed Class
11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14                  SAN JOSE DIVISION

15 | CHRISTOPHER JACKSON,            )
   | ENOH I. ENOH, and WILLIAM      )    Case No.:
16 | MURRELL, for and on behalf of   )
   | themselves and other persons    )    **CLASS ACTION**
17 | similarly situated,             )
   |                                 )    **COMPLAINT**
18 |          Plaintiffs,            )
   |                                 )    **JURY TRIAL DEMANDED**
19 |                                 )
   |     vs.                         )
20 |                                 )
   | HP INC. and HEWLETT PACKARD     )
21 | ENTERPRISE COMPANY,             )
   |                                 )
22 |          Defendants.            )
23 |_____ )

24

25

26

27

28

## NATURE OF COMPLAINT

1.      This action is brought by two-former and one current African-American employee of HP, Inc. and Hewlett Packard Enterprise Company [hereinafter these two entities will be referred to as "HP"] to address HP's demonstrable policy of race and age discrimination. These three individuals (hereinafter referred to as "Representative Plaintiffs") bring this action on behalf of themselves and other similarly situated African-Americans and individuals over the age of forty (40) to redress Defendant's continuous and systemic pattern and practice of racial discrimination in lay-offs and promotions.  The Representative Plaintiffs would aver as follows:

2.      HP has followed a general practice of discriminating against African-Americans/blacks, and individuals over the age of forty (40), on the basis of race/color and/ or age with respect to promotions and lay-offs by enforcing a corporate policy and practice that expressly and impliedly discourages them from seeking higher paying and higher responsibility positions which has systematically denied African-American/blacks, and individuals over the age of forty (40), the same opportunities as Caucasian and/or younger employees are;

3.       This continuing systemic pattern and practice of race and age discrimination in employment has affected the Class Representatives and the class members they seek to represent in the following ways:

a.      HP intentionally restricted and excluded African-Americans from higher paying and higher responsibility positions by preventing and/or discouraging them from seeking any such positions;

b.      The criteria utilized by HP in making selection decisions-to include promotions and lay-offs-discriminate on the basis of race in violation of §703(k) of Title VII, 42 U.S.C. §2000e-2(k).  HP allowed an overwhelmingly Caucasian group of selectors to use a "hazy" selection process for its employment decisions. These processes disparately impacted African-American employees because they allow subjectivity and favoritism to influence employment decisions.  Because of this, the decision-makers are free to exercise their discretion in an unguided,

subjective manner that provides a ready mechanism for Caucasians to vent discriminatory feelings upon African-American employees;

c.      HP, in contravention of its own allegedly non-discriminatory hiring practices, does not post all jobs and instead relies on a "tap on the shoulder' procedure whereby it awards positions of higher pay and prestige to Caucasian employees;

d.      HP initiated a Workforce Reduction Plan [hereinafter "WRP"] that was, by its own admission, aimed at making the company younger by using a "facially neutral" job shedding process that disparately impacted its workforce over the age of 40 in violation of the Age Discrimination in Employment Act; 29 U.S.C. § 621;

e.      HP's intentionally and willfully discriminated against its older employees by targeting them for dismissal for "phantom" performance issues and/or as part of its greater WRP.  HP then moved much younger employees into slots now vacant as a result of its discriminatory employment practices that violated of the Age Discrimination in Employment Act; 29 U.S.C. § 621; and,

f.      HP intentionally and willfully discriminated its older employees with regard to promotional opportunities.

## JURISDICTION AND VENUE

4.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(3), and (4), 2201 and 2202, 42 U.S.C. 2000d-2 and 2000e5(f) , and 29 U.S.C. § 621, et seq.

5.      This is a suit authorized and instituted pursuant to the Act of Congress known as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., as amended, "The Civil Rights Act of 1866," 42 U.S.C. § 1981 and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq.

6.      Venue is proper in the Northern District of California under 28 U.S.C. § 1391(B) & (c) because HP is located here, the persons responsible for overseeing the human resources function are here, HP maintains personnel records here, and engaged in or ratified the illegal conduct adversely affecting the Plaintiffs here. HP's failure to promulgate effective equal

employment policies originated in this district. The records relevant to whether this Defendant has issued such policies are located in this district.

## PARTIES

7.      Plaintiff Christopher Jackson is an African-American male, over the age of forty (40), and a resident of Atlanta, Georgia.  Mr. Jackson worked for HP from July 15, 1996 to July 18, 2016.  His last position was District Manager.

8.      Plaintiff Enoh I. Enoh is an African-American male, over the age of forty, and a resident of Laurel, Maryland.  Mr. Enoh worked for HP from 1996 to May 26, 2017.  His last position was Field Services Engineer.

9.      Plaintiff William Murrell is an African-American male, over the age of forty, and a resident of Atlanta, Georgia.  Mr. Murrell is a current employee of HP.  Mr. Murrell began working for HP as a contract in employee in or around 2000, and did not become a regular full-time employee until 2007.  His current position is Field Service Support Representative.

10.      Defendant HP, Inc., is a corporation organized under the laws of the State of California with its headquarters and principal place of business locate at 1501 Page Mill Road, Palo Alto, California.

11.      Defendant Hewlett-Packard Enterprise Company is a corporation organized under the State of Delaware with its headquarters and principal place of business located at 3000 Hanover Street, Palo Alto, California.  In November 2015, Hewlett-Packard Company split into two separate entities, [HP, Inc. and Hewlett Packard Enterprise Company], the Defendants in this lawsuit who are collectively referred to as HP.

## CONDITIONS PRECEDENT TO SUIT UNDER
## TITLE VII AND THE ADEA

12.     Plaintiff Christopher Jackson has fulfilled all conditions necessary to the institution of this action under Title VII.  Plaintiff Jackson received Notices of Right to Sue on or about April 25, 2017 and April 28, 2017, respectively, and is filing this Compliant within 90-days of receiving the same.  Plaintiff Jackson's claims arising under 42 U.S.C. §1981 do not require administrative exhaustion and are subject to a four-year statute of limitations.

13.     On June 26, 2017, Plaintiff Enoh I. Enoh, filed a charge of discrimination with the Baltimore Field Office of the United States Equal Employment Opportunity Commission.  The charge of discrimination is currently pending.  Plaintiff Enoh's claims arising under 42 U.S.C. § 1981 do not require administrative exhaustion.

14.     On June 23, 2017, Plaintiff William Murrell, filed a charge of discrimination with the Atlanta Field Office of the United States Equal Employment Opportunity Commission.  The charge of discrimination is currently pending.  Plaintiff Murrell's claims arising under 42 U.S.C. § 1981 do not require administrative exhaustion.

## COLLECTIVE ACTION ALLEGATIONS

15.     Plaintiffs bring this collective action pursuant to 29 U.S.C. §§ 216(b), 626(b) seeking liability-phase injunctive and declaratory relief on behalf of a collective of all individuals over the age of 40 and older in the United States denied promotions and laid-off at any time from January 21, 2016 through the resolution of this action for claims under the ADEA.

16.     Plaintiffs also bring this collective action pursuant to 29 U.S.C. §§ 216(b), 626(b) for monetary damages and other make-whole relief on behalf of a collective of all individuals over the age of 40 denied promotions and laid-off in the United States at any time from January 21, 2016 through the resolution of this action for claims under the ADEA.

17.     Plaintiffs and other potential members of the collective are similarly situated in that they have all sought and been denied or were deterred from applying for promotions and/or were laid-off as a result of HP's ageist policies and practices that have the purpose and effect of denying them employment opportunities because of their age.

18.     There are many similarly situated collective members who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Notice should be sent to the collective pursuant to 29 U.S.C. §§ 216(b), 626(b).

19.     As part of its regular business practice, HP has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the ADEA with respect to Plaintiffs and the collective. This policy and pattern or practice includes, but is not limited to:

    a. willfully refusing to promote individuals over the age of 40; and,

    b. willfully implementing a lay-off scheme that targeted individuals over the age of 40 for termination.

20.     HP maintained and implemented these policies and practices with the purpose and effect of denying Plaintiffs and other members of the collective employment opportunities because of their age. These policies cannot be justified on the basis of reasonable factors other than age.

21.     HP is aware or should have been aware that federal law prohibits it from considering an employee's age with regard to promotions and lay-offs.

## CLASS ACTION ALLEGATIONS

22.     The Representative Plaintiffs sue on behalf of themselves and on behalf of all other similarly situated current, past, present, and future employees of HP who are African-American/black, who have been, continue to be, or in the future subject to one or more aspects of the systemic race discrimination described in this Complaint.  Such systemic race discrimination

includes the Defendant's (1) failure to promulgate, maintain, and enforce racially non-discriminatory employment policies and practices; (2) racially unequal terms and conditions of employment; and (3) racially discriminatory selection policies.

23.    The claims herein have been brought and may properly be maintained as a class action because there is a well-defined community of interest among Class members with respect to the claims asserted herein and the proposed Class is ascertainable:

### A.    COMMON QUESTIONS OF LAW AND FACT

The prosecution of the claims of the Representative Plaintiffs requires adjudication of numerous questions of law and fact common to their individual claims and those of the putative classes they seek to represent.  The common questions of law would include, inter alia:  whether the Defendant has engaged in systemic race discrimination in its tolerance of racially discriminatory selection and promotion policies, and in the general terms and conditions of work and employment in a manner made unlawful under the "Civil Rights Act of 1964," 42 U.S.C. § 2000 et seq., and "The Civil Rights Act of 1866," 42 U.S.C. § 1981and 1981a.  The common questions of fact would include, inter alia: (1) whether HP discriminated against African-American employees because of their race with regards to promotions and layoffs; (2) whether compensatory and punitive damages, injunctive relief, and other equitable remedies for the class are warranted; and (3) whether HP discriminated against African-Americans in other terms and conditions of employment.  The details of the Representative Plaintiffs' claims are encompassed within the claims prosecuted on behalf of the class and set forth in this Complaint.

### B.    TYPICALITY

The claims of the Representative Plaintiffs are typical of those of the members of the class.  The Representative Plaintiffs and all class members have been and are similarly adversely affected by the systemic racially discriminatory practices complained of herein.  Specifically, the

representative claims, like those of the class members, arise out of Defendant's pervasive discriminatory conduct with regard to race discrimination in promotions, layoffs and other terms and conditions of employment.  The relief necessary to remedy the claims of the Representative Plaintiffs is the same relief that is necessary to remedy the claims of the putative class members in this case.  The Representative Plaintiffs seek the following relief for individual claims and class claims asserted herein:  (1) declaratory judgment that Defendant has engaged in systemic race discrimination against African-Americans; (2) a permanent injunction against such continuing discrimination; (3) injunctive relief which restructures HP's selection, lay-off and work environment policies, practices and procedures so that Plaintiffs and class members will be able to compete fairly in the future for promotions and enjoy terms and conditions of employment traditionally afforded similarly situated Caucasian employees; (4) backpay, front pay, compensatory damages, and other equitable remedies necessary to make the Plaintiffs, and the class, whole from HP's past discrimination; and, (5) attorneys' fees, costs, and expenses.

### C.    NUMEROSITY AND IMPRACTICABILITY OF JOINDER

The class that the Representative Plaintiffs seek to represent is to numerous to make joinder practicable.  The proposed class consists of numerous former, current, and future African-Americans who either have been, are, or will be, employed by HP.  HP's pattern and practice of race discrimination also makes joinder impracticable by making it impractical and inefficient to identify many members of the class prior to the determination of the merits of HP's class wide liability.  Thus, the number of Class members is currently indeterminate, but is certainly numerous.

### D.    ADEQUACY OF REPRESENTATION

The Representative Plaintiffs will fairly and adequately protect the interests of the class inasmuch as they are broadly representative, as reflected in the preceding paragraphs.  There are

no conflicts of interest present with the members of the proposed class as each would benefit from the imposition of a remedy for the Defendant's discriminatory employment practices.  The Representative Plaintiffs have retained counsel experienced in litigating major class actions in the field of employment discrimination, and who are prepared and able to meet the time and fiscal demands of class action litigation of this size and complexity.  The combined interest, experience, and resources of the Representative Plaintiffs and their counsel to litigate competently the individual and class claims of the race based employment discrimination at issue satisfy the adequacy of representation requirement under Fed.R.Civ.P. 23(a)(4).

F.    EFFICIENCY OF CLASS PROSECUTION OF COMMON CLAIMS

Certification of a class of similarly-situated African-Americans is the most efficient and economical means of resolving the questions of law and fact that are common to the individual claims of the Representative Plaintiffs and the proposed class. The individual claims of the Representative Plaintiffs require resolution of the common question of whether Defendant has engaged in a systemic pattern of discrimination against African-Americans.  The Representative Plaintiffs seek remedies to undo the adverse effects of such discrimination in their own lives, careers and working conditions and to prevent such in the future. The Representative Plaintiffs have standing to seek such relief because of the adverse effect that such discrimination has had on them individually and on African-Americans.  In order to gain such relief for themselves, as well as for the putative class members, the Representative Plaintiffs will first establish the existence of systemic race discrimination as the premise of the relief they seek. Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations. Certification of the class of African-Americans affected by the common questions of law and fact is the most efficient and judicious means of presenting the evidence and arguments

necessary to resolve such questions for the Representative Plaintiffs, the class and the Defendant. The Representative Plaintiffs' individual and class claims are premised upon the traditional bifurcated method of proof and trial for systemic disparate treatment claims of the type at issue in this complaint. Such a bifurcated method of proof and trial is the most efficient method of resolving such common issues.

### G.    CERTIFICATION IS SOUGHT PURSUANT TO FED. R. CIV. P. 23(b)(2)

HP has acted on grounds generally applicable to the named Plaintiffs and the proposed class by adopting and following systemic practices and procedures that discriminate on the basis of race.    Race discrimination are HP's standard operating procedure rather than sporadic occurrences. HP refused to act on grounds generally applicable to the putative class by: (1) refusing to adopt or follow selection procedures which do not systemically discriminate against African-Americans; and (2) refusing to provide equal terms and conditions of work to African-Americans.    HP's systemic race discrimination and refusal to act on grounds that are non-discriminatory have made appropriate final injunctive relief and declaratory relief with respect to the class as a whole.    The injunctive relief and declaratory relief are the predominate reliefs sought because they are both the cumulation of the proof of the Defendant's individual and class-wide liability at the end of Stage I of a bifurcated trial and the essential predicate for the named Plaintiffs' and class members' entitlement to monetary and non-monetary remedies at Stage II of such a trial. Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the existence of systemic racial discrimination against African-American individuals.    Such relief is the factual and legal predicate for the named Plaintiffs' and the class members' entitlement to injunctive and equitable remedies caused by such systemic discrimination.

## H. ALTERNATIVELY CERTIFICATION IS SOUGHT PURSUANT TO FED. R.CIV. P. 23(b)(3)

The common issues of fact and law affecting the claims of the Representative Plaintiffs and proposed class members, including, but not limited to, the common issues identified above, predominate, over any issues affecting only individual claims.  A class action is superior to other available means for the fair and efficient adjudication of the claims of the named Plaintiffs and members of the proposed class.  The cost of proving the Defendant's pattern or practice of discrimination makes it impracticable for the named Plaintiffs and members of the proposed class to control the prosecution of their claims individually.  The Northern District of California is the most logical forum in which to litigate the claims of the Representative Plaintiffs and the proposed class in this case because the Defendant's home office is here; the persons responsible for overseeing the human resources function are here; upon information and belief HP maintains personnel records here; and engages in or ratifies illegal conduct adversely affecting the Plaintiffs here.

### I.   ALTERNATIVELY CERTIFICATION IS SOUGHT PURSUANT TO FED. R. CIV. P. 23(c)(4) FOR INJUNCTIVE AND DECLARATORY RELIEF.

Alternatively, claims for injunctive and declaratory relief for the Injunctive Relief Class are properly certified under Federal Rule of Civil Procedure 23(c)(4) because such claims present only common issues, the resolution of which would advance the interests of the parties in an efficient manner.

### J.   ALTERNATIVELY CERTIFICATION IS SOUGHT PURSUANT TO FED. R. CIV. P. 23(c)(4) FOR CLASS WIDE LIABILITY.

Alternatively, class wide liability claims are properly certified under Federal Rule of Civil Procedure 23(c)(4) for the Classes because such claims present only common issues, the resolution of which would advance the interests of the parties in an efficient manner.

### K.    PUNITIVE DAMAGES MAY ALTERNATIVELY BE CERTIFIED PURSUANT TO FED.R.CIV.P. 23(b)(2).

Punitive damages liability may alternatively be certified under Federal Rule of Civil Procedure 23(b)(2) because such relief focuses on the conduct of HP and not the individual characteristics of the Plaintiffs and are an allowable form of incidental monetary relief.

## CLAIMS OF REPRESENTATIVE PLAINTIFFS

**Christopher Jackson**

24.    Plaintiff Christopher Jackson is an African-Americans male, over the age of forty (40), and resident of Atlanta, Georgia. Mr. Jackson is 52 years old.

25.    Mr. Jackson worked for HP from July 15, 1996 to July 18, 2016, with his last position being District Manager.  Up until 2015, Mr. Jackson had always received satisfactory performance evaluations and his career with HP had been exemplary.

26.    In 2014, Mr. Jackson became aware of the promotion of two Caucasian male employees, Mark Valan and Thomas Medforth.  Messrs. Valan and Medforth were promoted without the positions being posted for open-bid.  HP's standard practice required mangers to submit a requisition for a position and then it was posted for bid by interested applicants.  Both of these individuals had been District Managers like Mr. Jackson and after their promotions he had to report to Mr. Medforth.

27.    In 2015, HP allowed Medforth to use an antiquated evaluative tool to measure the performance of District Managers.   This evaluative tool was introduced mid-year and disproportionately graded as low the performance of African-American managers.

28.    Because of this tool, Shelby Atkins [African-American District Manager] was laid off by Medforth.  Atkins' operations performance results were better than Caucasian managers that did not get laid off.

29.      Later in 2015, Mr. Jackson was rated as Partially Achieved, which means that he did not meet his performance goals for the rating period.

30.      In November 2015, Medforth was elevated as Manager for all District Managers. Mr. Jackson did not get a chance to compete for this position as his low rating of that same year precluded him from applying.

31.      After Medforth assumed his new role, Mr. Jackson and other African-American District Managers requested that HP provide them with additional resources in the form of personnel to meet the demands of their territories.   Each of their requests were denied. Caucasian District Managers who made the same requests received additional resources in the form of personnel.   This caused the African-American managers to miss their production goals while the Caucasian employees met theirs.

32.      On June 29, 2016, Mr. Jackson complained to HP that he was being discriminated against because of his race.   In his complaint Mr. Jackson named Thomas Medforth as the individual discriminating against him.   Mr. Jackson never received any response regarding any complaint of discrimination, however, on July 18, 2016, Mr. Jackson was informed that he was being terminated.

33.      This was not the first time that Mr. Jackson had raised issues of racial fairness with HP.   With regard to his termination, Mr. Jackson was informed that his separation was due to restructuring, however, he was the only individual in his department let go even though his performance was better or at least equal to that of his Caucasian and/or younger counterparts.

34.      Upon information and belief, Mr. Jackson along with African-Americans as a class, has been the victim of racial discrimination with respect to promotions, lay-offs, and/or other terms and conditions of employment.

35.    This systemic race discrimination further adversely affected Mr. Jackson's status as an employee by promoting and reinforcing racial stereotypes and bias in promotions, lay-offs and other terms and conditions of employment.  Upon information and belief all African-American and/or individual over the age of 40 who have been laid-off due to "restructuring" have been subjected to adverse conditions of employment and to disparate employment practices.

36.    Mr. Jackson has personally observed that HP has very few African-Americans in positions above the District Manager level.  The company's hiring and promotional practices have a disparate impact on African-Americans in that it stifles their career progression.  If Mr. Jackson's career had been allowed to progress without these racially discriminatory stumbling blocks, he would have been a director level employee.

37.    Upon information and belief, HP also discriminates against employees over 40 years old as a class in violation of the ADEA.  Mr. Jackson is 52 years old and up until the time of his termination had been a model employee.  Mr. Jackson was subjected to a reduction in force of one and the majority of the employees retained were younger than him.  Upon information and belief, HP subjected Mr. Jackson and other individuals over the age of 40 to disparate treatment as a class.

**Enoh I. Enoh**

38.    Plaintiff Enoh I. Enoh, is a 58 year old African-American male. He began working for HP in 1996 as a Customer Service Engineer.  Mr. Enoh possesses a BSE degree in Information Systems Engineering.  After the split in November 2015, Mr. Enoh's job title was Field Services Engineer.

39.    As an employee of HP Mr. Enoh almost always received at least satisfactory evaluations and his work at times was graded as exemplary.  Furthermore, in his career Mr. Enoh

worked with about 13 different managers, without a single verbal query about his performance. Nevertheless, Mr. Enoh was terminated by HP on or about May 26, 2017.

40.     In about December 14, 2015, Mr. Enoh was hospitalized after a surgery which required him to spend one week in the Intensive Care Unit.  On more than one occasion, HP Manager Paul Edinger, Caucasian male, pressured Mr. Enoh to return to work before he had been cleared by his treating physician.

41.     Eddinger attempted to bully Mr. Enoh to return to work before he was medically cleared, even though he was not his direct manager.  Mr. Enoh had already cleared his need to be off with his direct manager and human resource officials who were all aware of his situation. Eddinger was very dismissive of Mr. Enoh's need to be off and his sickness.  Eddinger did not behave this way when addressing the needs of Caucasian and/or younger employees.

42.     Of the approximately 14 members of Mr. Enoh's team, three were African-American.   Mr. Enoh was the senior team member in terms of HP employment and chronological age.

43.     Beginning in June 2016, Edinger began to subject Mr. Enoh's work to increased and unwarranted scrutiny.  For example, Eddinger routinely accused Mr. Enoh of violating work rules that Caucasian and/or younger team members did not have to abide by.  Eddinger made it a point to embarrass Mr. Enoh in front of his peers by stating that he was the only employee who had a problem with the HP's rules and regulations which was false and misleading.

44.     In December 2016, Caucasian and/or younger team members accused Mr. Enoh of faking an illness to avoid working additional hours at night.  Upon information and belief, these individuals were parroting what had been expressed to them by Eddinger about the validity of Mr. Enoh's medical condition.

45.    On or about February 1, 2017, Mr. Enoh was demoted and moved to another reporting structure.  Mr. Enoh immediately brought his concerns about being demoted and the discriminatory way Eddinger treated him to his new manager's attention, but nothing was done about it.

46.    Also, on late February 23, 2017, Mr. Enoh was singled out for a verbal reprimand by Eddinger for not giving enough notice to attend a required training that was to be held on February 23, 2017.  Caucasian and/or younger employees sometimes gave a day or two of notice, and on occasion did not announce their need to attend training it until the scheduled day.

47.    On March 15, 2017, a spreadsheet was sent out listing all members of team, and their skill-set.  Mr. Enoh's name was the only one missing from the list.  He brought this up with HP managers and Human Resource personnel, none of whom would address the matter.

48.    On March 16, 2017, Mr. Enoh emailed his direct manager, Michael Yadron, Caucasian male, and complained that he was being treated less advantageously than his Caucasian and/or younger counterparts.

49.    On May 17, 2017, Eddinger sent out an email copying the entire team stating that effective immediately no one was to have any contact with Mr. Enoh.  Mr. Enoh was terminated on May 26, 2017.

50.    At the time of his termination Mr. Enoh was 58 years old and had worked for HP 20 plus years.  Mr. Enoh is highly experienced on high and low-end HP equipment and his performance ratings were the same or better than most members of his team, however they are still employed and he is out of a job.

51.    Prior to his termination, HP hired about 5 or 6 Caucasian and/or younger employees.  As a condition of his employment, Mr. Enoh was required to train and mentor some of these individuals.  All of these individuals are still employed.

Class and Collective Action Complaint

52.    With regard to his termination, Mr. Enoh was informed that his separation was due to "restructuring," however, upon information and belief he was the only individual on his team let go even though his performance was better or at least equal to his Caucasian and/or younger counterparts.

53.    Upon information and belief, Mr. Enoh along with African-Americans as a class, have been the victim of racial discrimination with respect to promotions, lay-offs, and/or other terms and conditions of employment.

54.    Mr. Enoh was directly affected by said discriminatory practices by being deprived of the opportunity to be work and advance in an environment free of race discrimination.

55.    This systemic race discrimination further adversely affected Mr. Enoh's status as an employee by promoting and reinforcing racial stereotypes and bias in promotions, lay-offs and other terms and conditions of employment.

56.    Upon information and belief African-American employees who have been laid-off due to "restructuring" have been subjected to adverse conditions of employment and to disparate employment practices.

57.    Upon information and belief, the lay-offs instituted by HP have had a disparate impact on the number of African-Americans in their work force, in that it has reduced their numbers significantly.

58.    Upon information and belief, HP have very few African-Americans in positions above the District Manager level.   HP's promotional practices have a disparate impact on African-Americans in that it stifles their career progression.  If Mr. Enoh's career had been allowed to progress without these racially discriminatory stumbling blocks, he would now have been a director level employee.

59.    Upon information and belief, HP also discriminates against employees over 40 years old as a class in violation of the ADEA.  The Charging Party is 58 years old and up until the time of his termination had been a model employee.

60.    Mr. Enoh was subjected to a reduction in force of one and the majority of the employees retained were younger than him.  Upon information and belief, HP subjected Mr. Enoh and other individuals over the age of 40 to disparate treatment as a class.

**William Murrell**

61.    Plaintiff Willaim Murrell is an African-American male. In 2000 or 2001, he began working for HP as a contract employee.  For the next 5 or 6 years, Mr. Murrell attempted to become a regular full-time employee of HP with little success until 2007.  Caucasian employees who were contract workers did not have such a protracted wait before they became full-time employees with HP.

62.    Upon hiring on full-time, Mr. Murrell's job title was Field Service Support Representative.  Mr. Murrell has two associate degrees and a Bachelor's Degree in Business Administration.

63.    In or around November 2015, Mr. Murrell was re-classified as a Field Service Support Representative II.  As Field Service Support Representative II, Mr. Murrell almost always received at least satisfactory evaluations and his work at times was graded as exemplary. Furthermore, in his career with HP, he worked with about 11 different managers, without a single write up about his performance.  Mr. Murrell was also a Senior Team Lead and in that role he was responsible for monitoring the day to day work of the less senior members of the team.

64.    Around January or February 2016, Mr. Murrell was informed by his manager, Christopher Jackson [African-American] that he was being considered for a merit promotion to the position of Customer Engineer III.  At that time, Mr. Murrell had been a Field Services

Support Representative II for approximately 9 years.  Caucasian employees who started their careers at the same time as Mr. Murrell and that were in his peer group, have advanced much faster through the company to where they are now District Managers or in other positions of higher authority, prestige and pay.

65.    At times in his career, Mr. Murrell had been discouraged from attempting to advance by Caucasian managers hostile to his aspirations of going into management.  In July 2016, Mr. Jackson was terminated and another manager [Eric Stevenson (Caucasian male)] was moved into his slot.  Mr. Jackson was mentoring Mr. Murrell for management and had him serve in that role on occasion.  It was Mr. Murrell's understanding that a Senior Team Lead could move into management if they were judged to have the ability.  Mr. Jackson believed that Mr. Murrell possessed such ability.

66.    Upon assuming Mr. Jackson's duties, Stevenson introduced himself to Mr. Murrell and two other less senior Team Leads.  These individuals were Caucasian.  Stevenson expressed that he was there to keep things going in accordance with the game-plan that Mr. Jackson had implemented earlier in the year.  No mention was made about any promotions.

67.    On January 26, 2017, promotions were announced by Thomas Medford [Caucasian male] with 17 individuals being promoted. Mr. Murrell was not selected for promotion instead the two Caucasian junior Team Leads [Bill Howell & Robert Brown] were selected.  These individuals had been Team Leads for a little over a year but were promoted ahead of Mr. Murrell.  Upon information and belief, of the 17 promotions only three went to African-Americans.  Mr. Murrell never even received an interview.

68.    After learning of these promotions, Mr. Murrell lodged a complaint with HP's Human Resource department in Palo Alto, California.  HP Human Resource official Rex Webb

[Caucasian male] stated that Stevenon's reasons for not promoting Mr. Murrell were valid and reasonable.

69.     Upon information and belief, Mr. Murrell along with African-Americans as a class, have been the victim of racial discrimination with respect to promotions, applications and/or other terms and conditions of employment.

70.     Mr. Murrell was directly affected by said discriminatory practices by being deprived of the opportunity to work and advance in an environment free of racial discrimination.

71.     This systemic race discrimination further adversely affected Mr. Murrell's status as an employee by promoting and reinforcing racial stereotypes and bias in promotions, applications, job assignments, compensation, and other terms and conditions of employment.

72.     Upon information and belief, HP has very few African-Americans in positions above the District Manager level.  HP's promotional practices have a disparate impact on African-Americans in that it stifles their career progression.  If Mr. Murrell's career had been allowed to progress without these racially discriminatory stumbling blocks, he would now have been at least a District Manager.

## CLASS CLAIMS

A.     **COUNT ONE-Intentional Discrimination on the Basis of Race
in Violation of Title VII of the Civil Rights Act of 1964 and
42 U.S.C. § 1981.**

73.     Representative Plaintiffs restate and incorporate by reference all applicable paragraphs above as part of this Count of the Complaint.

74.     HP has discriminated against the Representative Plaintiffs and the class they seek to represent with regards to selection procedures and other terms and conditions of employment because of their race, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

75.    HP's conduct has been intentional, deliberate, willful and conducted with disregard for the rights of Plaintiffs and members of the proposed class.

76.    By reason of HP's discriminatory employment practices, the Representative Plaintiffs and the proposed class members have experienced extreme harm, including loss of compensation, wages, back and front pay, and other employment benefits, and, as such, are entitled to all legal and equitable remedies available under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

**B.    COUNT TWO-Disparate Impact Discrimination on the Basis of Race In Violation of Title VII of the Civil Rights Act of 1964.**

77.    Representative Plaintiffs restate and incorporate by reference all applicable paragraphs above as part of this Count of the Complaint.

78.    The criteria utilized by HP in making selection decisions-to include promotions and lay-offs-discriminate on the basis of race in violation of §703(k) of Title VII, 42 U.S.C. §2000e-2(k).

78.    HP allowed an overwhelmingly Caucasian group of selectors to use a "hazy" selection process for its employment decisions. These processes disparately impacted African-American employees because they allow subjectivity and favoritism to influence employment decisions.

79.    Because of this, the decision-makers are free to exercise their discretion in an unguided, subjective manner that provides a ready mechanism for Caucasians to vent discriminatory feelings upon African-American employees.

80.    HP has maintained these discriminatory policies, patterns, and/or practices both within and outside the liability period in this case.

81.    As a direct result of HP's discriminatory policies and/or practices as described above, Plaintiffs and the class they seek to represent have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

### C.    COUNT THREE- Intentional Discrimination
### (Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 623(a)(1))

82.    Representative Plaintiffs restate and incorporate by reference all applicable paragraphs above as part of this Count of the Complaint.

83.    This Claim is brought by the Representative Plaintiffs on behalf of themselves and the collective they seek to represent. HP engaged in an intentional, company-wide, and systematic policy, pattern, and/or practice of discrimination against employees ages 40 and older. HP has intentionally discriminated against the Plaintiffs and the collective in violation of the ADEA by, among other things:

a. willfully refusing to promote individuals over the age of 40; and,

b. willfully implementing a lay-off scheme that targeted individuals over the age of 40 for termination.

84.    These company-wide policies are intended to and do have the effect of denying Plaintiffs and the collective of employment opportunities because of their age. The discriminatory acts that constitute HP's pattern and/or practice of discrimination have occurred both within and outside the liability period in this case.

85.    As a direct result of HP's discriminatory policies and/or practices as described above, Plaintiffs and the collective have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

86.    The foregoing conduct constitutes illegal, intentional discrimination and unjustified disparate treatment prohibited by 29 U.S.C. § 623(a)(1).

### D.   COUNT FOUR- Disparate Impact Discrimination
### (Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 623(a)(2))

87.   Representative Plaintiffs restate and incorporate by reference all applicable paragraphs above as part of this Count of the Complaint.

88.   This Claim is brought by Representative Plaintiffs on behalf of themselves and the collective they seek to represent.  HP maintains discriminatory policies, patterns, and/or practices that have an adverse impact on employees ages 40 and older in violation of the ADEA and are not, and cannot be, justified by reasonable factors other than age.  Specifically HP's promotions and facially neutral lay-off policies have had a disparate impact on individuals over the age of 40.

89.   HP has maintained these discriminatory policies, patterns, and/or practices both within and outside the liability period in this case.

90.   As a direct result of HP's discriminatory policies and/or practices as described above, Plaintiffs and the collective they seek to represent have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

## VIII.   PRAYER FOR RELIEF

Wherefore, the Representative Plaintiffs, on behalf of themselves and the proposed class members whom they seek to represent, request the following relief:

1.   Acceptance of jurisdiction of this cause;

2.   Certification of the case as a class action maintainable under Federal Rules of Civil Procedure Rule 23(a), Rule 23(b)(2) and/or Rule 23(b)(3) on behalf of the proposed Plaintiff class, and designation of Representative Plaintiffs as representatives of the class and their counsel of record as class counsel;

3.      A declaratory judgment that the defendant's employment practices challenged herein

are illegal and violative of the rights secured to Representative Plaintiffs and members of the proposed class;

4.      A preliminary and permanent injunction against the Defendant and their partners, officers, owners, agents, successors, employees, representatives and any and all persons acting in concert with it, from engaging in any further unlawful practices, policies, customs, usages, racial discrimination and retaliation by the Defendant set forth herein;

5.      An Order requiring the defendants to initiate and implement programs that (i) describes how and when International will investigate complaints of racial harassment, (ii) assures the employee that he or she will be told the results of the investigation, (iii) describes the actions which will be taken by management if the investigation supports the complainant; (iv) assures the employee that International will make follow-up inquiries to determine the problem has been solved (v) provide equal employment opportunities for African-American employees; (vi) remedy the effects of the defendants' past and present unlawful employment practices; and (vii) eliminate the continuing effects of the discriminatory and retaliatory practices described above;

6.      An Order requiring the defendant to initiate and implement systems of assigning, training, transferring, and assigning overtime   African American employees in a non-discriminatory manner;

7.      An Order establishing a task force on equality and fairness to determine the effectiveness of the programs described above, which would provide for (i) the monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity, (ii) the

assurance that injunctive relief is properly implemented, and (iii) a quarterly report setting forth

information relevant to the determination of the effectiveness of the programs described above.

8.    An Order placing or restoring the plaintiffs and the class they seek to represent into

those jobs they would now be occupying but for the defendants' discriminatory practices.

9.    An award of back pay; front pay; compensatory damages, punitive damages, nominal

damages, lost benefits; preferential rights to jobs; damages for lost compensation and job

benefits suffered by the individual plaintiffs and the class they seek to represent; and any other

appropriate equitable relief to the plaintiffs and class members;

10.    An award of litigation costs and expenses, including reasonable attorneys' fees, to

the Plaintiffs and class members;

11.    Prejudgment interest; and

12.    Such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

_____

Byron R. Perkins
Lee Winston
Roderick T. Cooks
Shewanna Dobson
Jonathan E. Richardson
Attorneys for the Plaintiffs and the
Putative Class

**OF COUNSEL**:
Jonathan E. Richardson, Esq.
SMITH & HIRSCH PLC
3250 Dickerson Pike, Suite 121
Nashville, TN 37207
(615) 242-5003
(615) 244-5031 fax

Class and Collective Action Complaint

Byron R. Perkins, Esq.
Shewanna Dobson, Esq.
THE COCHRAN FIRM
505 North 20th Street
Suite 825
Birmingham, AL 35203

Lee Winston, Esq.
Roderick T. Cooks, Esq.
Winston Cooks, LLC
2-20th Street North, Suite 1330
Birmingham, AL 35203
(205) 502-0970
(205) 278-5876 fax
rcooks@winstoncooks.com
lwinston@winstoncooks.com

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class pray for relief as follow:

1.      Certification of the case as a class action on behalf the proposed classes;

2.      Designation of Plaintiffs as representatives of the Class;

3.      Designation of Plaintiffs' Counsel of record as Class Counsel;

4.      A declaratory judgment that the practices complained of herein are unlawful and violate Title VII, 42 U.S.C. § 1981 and the ADEA;

5.      A preliminary and permanent injunction against the Company and its officers, agent, successors employees, representatives, and any and all persons acting in correct with them from engaging in each of the unlawful policies, practices, customs, and usages set forth herein;

6.      An order that the Company institute and carry out policies, practices, and programs that provide equal employment opportunities for all minorities, and that it eradicate the effects of its past and present unlawful employment practices;

7.      For back pay, front pay and other monetary relief according to proof (including interest and benefits);

Class and Collective Action Complaint

8.    For all damages sustained as a result of the Company's conduct according to proof;

9.    For compensatory damages, nominal damages, and liquidated damages according to proof;

10.    For exemplary and punitive damages in an amount commensurate with the Company's ability to pay, to deter future conduct, and to set an example for others;

11.    For reasonable attorneys' fees and cost including under to the extent allowable by law;

12.    Pre-judgment and post-judgment interest, as provided by law; and

13.    For such ancillary orders, decrees and such further legal and equitable relief as may be necessary to enjoin and restrain the improper conduct and wrongdoing of Defendant; and

14.    For such other and further relief as the Court deems proper.

## JURY TRIAL DEMANDED

Respectfully submitted,

/s/Roderick T. Cooks
Lee D. Winston
Roderick T. Cooks
Jay Greene
Attorneys for the Plaintiffs and Proposed Class and Collective Members

**OF COUNSEL:**
Lee D. Winston
lwinston@winstoncooks.com
Roderick T. Cooks
rcooks@winstoncooks.com
Winston Cooks, LLC
505 20th Street North
Suite#815
Birmingham, AL 35203
Telephone:    (205) 502-0970
Facsimile:    (205) 278-5876

Jay Greene
jay@jaygreenelawfirm.com
The Greene Law Firm
595 Market Street
Suite 680
San Francisco, CA 94105
Telephone:    (415) 905-0215

Class and Collective Action Complaint