# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| ENOH I ENOH, ET AL., | Case No. 17-cv-04212-BLF |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE WITHOUT PREJUDICE; GRANTING IN PART WITHOUT PREJUDICE DEFENDANTS' REMAINING MOTION TO DISMISS AND MOTION TO STRIKE** |
| HEWLETT PACKARD ENTERPRISE COMPANY, et al., | |
| Defendants. | |
| | [Re: ECF 35] |

This case involves alleged race and age discrimination in employment at technology giant Hewlett-Packard, which spun-off into two separate entities in November 2015. Defendants HP Inc. and Hewlett Packard Enterprise Company now move to dismiss this lawsuit, or transfer it to the Northern District of Georgia where three of the named plaintiffs lived and worked, on the grounds that venue in the Northern District of California is improper under 42 U.S.C. § 2000e-5(f)(3). *See generally* ECF 35 ("Mot.").

Plaintiffs oppose, arguing that venue is proper in this District where Defendants are headquartered based on comments made by former Hewlett-Packard President and CEO Meg Whitman. ECF 52-2 ("Opp'n"). Plaintiffs argue that Ms. Whitman's comments, such as her issuance of an alleged directive to managers nationwide "to make sure that we have a labor pyramid with lots of young people coming in right out of college and graduate school and early in their careers," evidence an overarching plan to discriminate against older workers at HP Inc. and Hewlett Packard Enterprise Company. Exh. 9 to Plaintiffs' Request for Judicial Notice, ECF 53-9.

Defendants also move to dismiss Plaintiffs' claims on the merits and move to strike the class allegations. The Court held a hearing on Defendants' combined motion on May 31, 2018. For the reasons that follow, the Court GRANTS Defendants' motion to dismiss for improper venue and GRANTS IN PART the remainder of Defendants' motion to dismiss and motion to strike. Accordingly, Plaintiffs' claims are DISMISSED WITHOUT PREJUDICE to re-filing this action in a district where venue is proper under § 2000e-5(f)(3).

## I.     BACKGROUND[1]

Plaintiffs Enoh I. Enoh ("Mr. Enoh"), Christopher Jackson ("Mr. Jackson"), Derek Mobley ("Mr. Mobley") and William Murrell ("Mr. Murrell") (collectively "Plaintiffs") bring this putative class and collective action against Defendants HP Inc. ("HP Inc.") and Hewlett Packard Enterprise Company ("HPE") (collectively, "Defendants") to challenge Defendants' employment practices that allegedly discriminate against African-American employees and applicants over the age of 40. *See* Second Amended Complaint ("SAC"), ECF 30. Specifically, Plaintiffs allege that Defendants engaged in race and age discrimination in hiring, promotions, and lay-offs in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, and the Age Discrimination in Employment Act ("ADEA"). *Id.* ¶¶ 85-103.

Although Plaintiffs filed this case in the Northern District of California, and Defendants are headquartered in Palo Alto, California, none of the named Plaintiffs resided in California or worked for either Defendant in California during the relevant class period. *Id.* ¶¶ 6-11. All four of the named Plaintiffs are African-American males over the age of 40. *Id.* ¶¶ 6-9.

### A.     Plaintiff Enoh

Mr. Enoh alleges that he is a resident of Maryland and worked for "HP" from 1996 until he was terminated on May 26, 2017. *Id.* ¶ 6.[2] Although not alleged by Plaintiffs, Defendants provide evidence that Mr. Enoh worked for HPE in Maryland at all times after Hewlett-Packard

---

[1] Plaintiffs' factual allegations are taken from the operative Second Amended Complaint and are accepted as true for purposes of a motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).
[2] As discussed below, Plaintiffs fail to differentiate between the legally distinct entities HP Inc. and HPE in their Second Amended Complaint, which requires amendment. *See generally* SAC.

reorganized in November 2015. *See* Declaration of Cindy Beene ("Beene Decl.") ¶ 3, ECF 35-3.[3]

Mr. Enoh's last held position was Field Services Engineer. SAC ¶ 6. Prior to Mr. Enoh's

termination, Plaintiffs allege that on or about February 1, 2017, Mr. Enoh was demoted and moved

to another reporting structure. *Id.* ¶ 32. Plaintiffs allege that Mr. Enoh immediately raised

concerns about the demotion and discrimination on his previous team with his new manager, but

"nothing was done about it." *Id.* As late as March 16, 2017, Mr. Enoh emailed his direct manager,

a Caucasian male, and complained that he was being treated less advantageously than his

Caucasian and/or younger counterparts. *Id.* ¶ 35. Mr. Enoh's manager, Paul Edinger, was also

based in Maryland. *See* Beene Decl. ¶ 4. Mr. Enoh was terminated in May 2017 and was told that

his separation from HPE was due to "restructuring," although he alleges on information and belief

that he was the only individual on his team let go. SAC ¶ 39. Defendants provide evidence that

the HPE manager who selected Mr. Enoh for workforce reduction, Michael Yadron, was based in

Florida at the time of that decision. *See* Beene Decl. ¶ 5.

Plaintiffs allege that Mr. Enoh filed a charge of discrimination with the Baltimore Field

Office of the United States Equal Employment Opportunity Commission ("EEOC") on June 26,

2017. SAC ¶ 12. Defendants provide copies of Plaintiffs' EEOC charges, which are incorporated

by reference into the SAC. *See* Declaration of Jeffrey J. Mann ("Mann Decl."), ECF 35-2.

According to these documents, Mr. Enoh's EEOC charge was filed on July 28, 2017. *See* Exh. E

to Mann Decl. As a result of his termination from employment, Mr. Enoh brings claims for race

discrimination against Defendants in violation of Title VII and Section 1981 (Counts 1 and 2) as

well as intentional discrimination and disparate impact age discrimination claims pursuant to the

ADEA (Counts 3 and 4). SAC ¶¶ 25-47.

### B.    Plaintiff Jackson

Mr. Jackson also alleges that he was terminated from his decades-long employment at HP

---

[3] The Court may properly consider Defendants' evidence for purposes of their motion to transfer venue only. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004) (finding that in a motion made pursuant to Federal Rule of Civil Procedure 12(b)(3), "the pleadings need not be accepted as true and the court may consider facts outside of the pleadings.")

as a result of age and race discrimination.  Mr. Jackson is a resident of Atlanta, Georgia who worked for HP Inc. in Georgia from July 15, 1996 to July 18, 2016 with the last held position of District Manager.  SAC ¶ 7; Declaration of Kim Ortolani ("Ortolani Decl.") ¶ 3, ECF 35-4.

In 2014, Mr. Jackson alleges that he became aware of the promotion of two Caucasian male employees, who were promoted without the positions being posted for open-bid.  SAC ¶ 50. Plaintiffs allege that prior to 2015, Mr. Jackson always received satisfactory performance evaluations and his career at HP had been exemplary.  *Id.* ¶ 49.  In late 2015, Mr. Jackson was rated as only "Partially Achieved" which meant he did not meet his performance goals for the rating period.  *Id.* ¶ 53.  In November 2015, Mr. Jackson did not get the chance to compete for the position of Manager for all District Managers due to his low rating which precluded him from applying.  *Id.* ¶ 54.  The job went to a Caucasian employee.  *Id.*

Subsequently, Mr. Jackson alleges that he and other African-American District Managers requested that HP provide them with additional resources in the form of personnel to meet the demands of their territories.  *Id.* ¶ 55.  Each of their requests was denied.  *Id.*  In contrast to the experience of African-American employees, Plaintiffs allege that Caucasian District Managers who made the same requests received additional resources in the form of personnel.  *Id.*  Plaintiffs allege that this caused the African-American managers to miss their production goals while the Caucasian employees met theirs.  *Id.*

Mr. Jackson alleges that on June 29, 2016, he complained to HP that he was being discriminated against because of his race.  *Id.* ¶ 56.  Mr. Jackson never received any response regarding his complaint of discrimination, however, he alleges that he was terminated from HP on July 18, 2016—less than one month after his complaint. *Id.*  Like Mr. Enoh, Mr. Jackson was informed that his separation was due to restructuring, although he alleges that he was the only individual in his department let go despite his superior or at least equal performance to that of his Caucasian and/or younger counterparts.  *Id.* ¶ 57.  Mr. Jackson alleges that the workforce reduction that he was selected for by his final manager, Thomas Medforth, was discriminatory. SAC ¶¶ 50-57.  Mr. Medforth worked for HP Inc. in Missouri and Arkansas at all relevant times. Ortolani Decl. ¶ 4.

United States District Court
Northern District of California

According to the documents submitted by Defendants, which are either incorporated by reference into the complaint or public records that are proper subjects of judicial notice, Mr. Jackson filed his first EEOC charge of discrimination against HP Inc. on August 22, 2016. *See* Exh. A to Mann Decl. In this initial charge, Mr. Jackson alleged that he was discriminated against and terminated by his supervisor on the basis of his race, and in retaliation for his complaints of racial discrimination. *Id.* On September 14, 2016, Mr. Jackson amended his charge of discrimination, claiming that he was discriminated against based on his age in addition to his race. *See* Exh. B to Mann Decl. In both of his charges, Jackson alleged that the earliest instance of discrimination occurred on or before June 29, 2016. *Id.*

In the SAC, Mr. Jackson asserts race discrimination in violation of Title VII and Section 1981, as well as age discrimination in violation of the ADEA under both intentional discrimination and disparate impact theories. *See* SAC ¶¶ 48-61.

### C. Plaintiff Mobley[4]

Plaintiff Mobley is a resident of Atlanta, Georgia who began working for HPE in November 2016 as a contract employee in Georgia. SAC ¶¶ 8, 62; Beene Decl. ¶ 6. Mr. Mobley was part of a training class for Advanced Solutions Engineers made up of contract workers who were trying to gain permanent employment with HP. SAC ¶ 63. Upon entering the training program, Mr. Mobley and other members were informed by HP representatives that they would transition to full-time employment at HP within 4 to 6 months if their performance was satisfactory. *Id.* Around April 2017, however, HP announced that they were instituting a hiring freeze which they communicated to the training class via a town hall meeting. *Id.* ¶ 64.

Mr. Mobley's training class of contract employees was made up of approximately seventeen individuals: fourteen African-Americans, two Caucasians, and one Turkish-American. *Id.* Later in April 2017, Mr. Mobley alleges that he learned that the only remaining Caucasian contract worker in the training class was hired as a full-time employee despite the alleged hiring freeze. *Id.* ¶ 65. When Mr. Mobley inquired as to whether there were any other positions that had

---

[4] Mr. Mobley was added as a plaintiff upon the filing of the Second Amended Complaint on September 29, 2017 to support Plaintiffs' claim against Defendants for failure to hire.

become "unfrozen," he was instructed to visit HP's website. Upon visiting the website, Mr. Mobley alleges that he applied for approximately seven open positions at HP, including the job he is currently performing. *Id.* Mr. Mobley alleges that each of his applications has been rejected despite his satisfactory performance rating. *Id.* ¶ 66.

On July 27, 2017, Mr. Mobley filed an EEOC charge of discrimination against Defendants. *See* Exh. D to Mann Decl.; *see also* SAC ¶ 14. The charge alleges that Mr. Mobley was not hired because of his race, with the earliest alleged discrimination taking place in April 2017. *See* Exh. D to Mann Decl. As it pertains to the SAC, Mr. Mobley asserts claims of race discrimination in hiring based on theories of intentional discrimination and disparate impact in violation of Title VII and Section 1981. SAC ¶¶ 62-72.

### D.  Plaintiff Murrell

Mr. Murrell is a resident of Atlanta, Georgia, and a current employee of HP Inc. in Georgia. *See* SAC ¶ 9; Ortolani Decl. ¶ 5. Mr. Murrell began his career as a contract employee at Hewlett-Packard in or around 2000, and became a full-time employee in 2007. SAC ¶ 9. Mr. Murrell is currently a Field Service Support Representative. SAC ¶ 9. Mr. Murrell alleges that promotions were announced on January 26, 2017, with seventeen individuals chosen for promotion. *Id.* ¶ 79. Mr. Murrell was not promoted and did not even receive an interview. *Id.* After learning of these promotions, Mr. Murrell alleges that he lodged a complaint with HP's Human Resource department in Palo Alto, California. *Id.* ¶ 80. In response, a Caucasian male Human Resource official at HP stated that the manager's reasons for not promoting Mr. Murrell were valid and reasonable. *Id.* Mr. Murrell alleges that Eric Stevenson made the decision not to promote him. *See* SAC ¶¶ 73-80. At all relevant times, Stevenson worked for HP Inc. in Florida. *See* Ortolani Decl. at ¶ 6.

On June 23, 2017, Mr. Murrell filed a charge of discrimination with the EEOC's Atlanta Field Office. SAC ¶ 15. In his charge, Mr. Murrell stated that he was not promoted by his manager due to his race, with the earliest instance of alleged discrimination taking place on January 26, 2017—the day he was not promoted. *See* Exh. C to Mann Decl. In the SAC, Mr. Murrell brings claims for race discrimination in promotion in violation of Title VII and Section

1981, based on theories of both intentional discrimination and disparate impact. SAC ¶¶ 73-84.

### E.    General Allegations of Race and Age Discrimination

In addition to the specific experiences of each named Plaintiff, the SAC includes a number of general allegations regarding HP Inc. and HPE's employment practices. *See, e.g.*, SAC ¶ 2. Plaintiffs allege that "HP intentionally restricted and excluded African-Americans from higher paying and higher responsibility positions by preventing and/or discouraging them from seeking any such positions." *Id.* ¶ 2(a). Moreover, Plaintiffs describe how HP allegedly allowed an overwhelmingly Caucasian group of selectors to use a "hazy" selection process for its employment decisions. *Id.* ¶¶ 2(b), 68, 91. This process allegedly disparately impacted African-American employees because it allowed subjectivity and favoritism to influence employment decisions. *Id.* Plaintiffs further allege that HP went against its own non-discriminatory hiring policies by not posting all open positions and instead relying on a "tap on the shoulder" procedure to award higher paying and more prestigious jobs to Caucasian employees. *Id.* ¶¶ 2(c), 67.

With regard to their age discrimination claims, Plaintiffs allege that HP initiated a "Workforce Reduction Plan" or "WRP" that was aimed at making the company younger. *Id.* ¶ 2(d). Plaintiffs allege that the WRP was a "facially neutral" job shedding process that disparately impacted HP's workforce over the age of forty. *Id.* According to Plaintiffs, HP willfully and intentionally discriminated against older employees by dismissing them for "phantom" performance issues or as part of the WRP. *Id.* ¶ 2(e).

As discussed further below, and although not included in the SAC, Plaintiffs rely on public statements made by Hewlett-Packard's then President and CEO Meg Whitman regarding the company's Workforce Reduction Plan. *See* Opp'n at 3-6, ECF 52-2.[5] On October 9, 2013, during a Hewlett-Packard Securities Analyst Meeting, Ms. Whitman stated the following regarding the next generation of IT professionals:

---

[5] In November 2015, when Hewlett-Packard split into HPE and HP Inc., former Hewlett-Packard President and CEO Meg Whitman became the Chairman of the Board of HP Inc. and the CEO of HPE. *See* SAC ¶ 11; *see also* Exh. 8 to Plaintiffs' Request for Judicial Notice, ECF 53-8.

So, as we think about our overall labor pyramid at Hewlett-Packard, we need to return to a labor pyramid that really looks like a triangle where you have a lot of early career people who bring a lot of knowledge who you're training to move up through your organization, and then people fall out either from a performance perspective or whatever.

***

And over the years, our labor pyramid doesn't look -- has become not a triangle. It's become a bit more of a diamond. And we are working very hard to recalibrate and reshape our labor pyramid so that it looks like the more classical pyramid that you should have in any company and particularly in ES. If you don't have a whole host of young people who are learning how to do delivery or learning how to do these kinds of things, you will be in real challenges.

***

Now, that's not something that changes like that. Changing the same shape of your labor pyramid takes a couple of years, but we are on it, and we're amping up our early career hiring, our college hiring. And we put in place an informal rule to some extent which is, listen, when you are replacing someone, really think about the new style of IT skills.

*See* Exh. 4 to Plaintiffs' Request for Judicial Notice, ECF 53-4.

Nearly two years later, on November 2, 2015, Ms. Whitman gave an interview with CNBC's David Faber, who asked her about HPE's recently announced job cuts. *See* Exh. 9 to Plaintiffs' Request for Judicial Notice, ECF 53-9. The transcript of the interview provides:

Faber: Still with a quarter of a million people work the company, you did announce significant job cuts about a month or so ago, when you gave—or maybe a bit more, six weeks—when you gave us more details. Is that going to be it for HPE?

***

Whitman: That should be it. I mean, that will allow us to right size our enterprise services business to get the right onshore/offshore mix, to make sure that we have a labor pyramid with lots of young people coming in right out of college and graduate school and early in their careers. That's an important part of the future of the company. So, it should be the last that we see. And you know, this will take another couple of years and then we should be done.

8

*Id.*  As discussed below, Plaintiffs argue that Ms. Whitman's comments reflect Defendants' overarching plan to get rid of older workers, which originated at HP headquarters in Palo Alto, California, and the effects of its implementation were felt nationwide—including by Plaintiffs Enoh in Maryland and Jackson in Georgia.  *See* Opp'n at 15.[6]

## II.     LEGAL STANDARD

### A.     Improper Venue

A defense of improper venue may be raised by motion under Federal Rule of Civil Procedure 12(b)(3).  When venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).  The plaintiff bears the burden of showing that venue is proper. *See Piedmont Label Co. v. Sun Garden Packing Co.,* 598 F.2d 491, 496 (9th Cir. 1979) ("Plaintiff had the burden of showing that venue was properly laid in the Northern District of California."). "When the plaintiff asserts multiple claims, it must establish that venue is proper as to each claim." *Kaia Foods, Inc. v. Bellafiore*, 70 F. Supp. 3d 1178, 1183 (N.D. Cal. 2014).  "However, where venue exists for the principal claim, federal courts will also adjudicate closely related claims, even if there is no independent source of venue for the related claims." *Id.*

In ruling on a motion to dismiss based on improper venue, "the allegations in the complaint need not be accepted as true and the Court may consider evidence outside the pleadings." *eBay Inc. v. Digital Point Sols., Inc.*, 608 F. Supp. 2d 1156, 1161 (N.D. Cal. 2009) (citing *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004)).  Whether to dismiss for improper venue, or alternatively to transfer venue to a proper court, is a matter within the sound discretion of the district court.  *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir.1992).

### B.     Failure to State a Claim

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d

United States District Court
Northern District of California

---

[6] Only Plaintiffs Enoh and Jackson assert age discrimination claims against Defendants.  Plaintiffs Murrell and Mobley bring race discrimination claims only.

729, 732 (9th Cir. 2001) ). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ). A claim is facially plausible when the alleged facts "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.     REQUESTS FOR JUDICIAL NOTICE

Before turning to the parties' arguments regarding proper venue and the adequacy of Plaintiffs' claims, the Court addresses the parties' requests for judicial notice. The Court may generally consider matters properly subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In support of their motion, Defendants filed a Request for Judicial Notice of the pleadings in *Forsyth, et al. v. HP Inc., et al.*, Case No. 5:16-cv-04775-EJD. *See* ECF 35-1. Defendants' request for judicial notice is GRANTED, as the documents are matters of public record and Plaintiffs do not dispute the documents' authenticity. Fed. R. Evid. 201; *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Although the Court accepts these documents as public filings, specific facts and legal conclusions set forth in the documents may not bind this Court.

In support of their opposition, Plaintiffs request that the Court take judicial notice of the following documents: (1) HP Press Release dated May 23, 2012; (2) HP Form 8-K dated May 23, 2012; (3) HP Workforce Reduction Plan; (4) HPQ-Hewlett-Packard Securities Analyst Meeting October 9, 2013; (5) HP Form 8-K dated May 22, 2014; (6) HP Form 8-K dated October 6, 2014; (7) HP Form 8-K dated September 14, 2015; (8) HP Form 8-K dated October 31, 2015; (9) CNBC

Transcript of CEO & HP Inc. Chairman Meg Whitman Interview. *See* ECF 53. Defendants concede that the Court may take judicial notice of press releases, news articles, and SEC filings for their existence, but Defendants oppose Plaintiffs' request to the extent they request the Court to assume the truth of the matters contained in these documents. *See* ECF 55 ("Reply") at 13.

The Court GRANTS Plaintiffs' request for judicial notice of these public records with respect to their existence and what was in the public domain, but the Court does not take judicial notice for the truth of their contents. *See Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 960 (9th Cir. 2009) ("Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true"). Moreover, the Court does not consider these materials with respect to the adequacy of Plaintiffs' claims in the SAC. Rather, the Court considers the material—including Ms. Whitman's statements—only as it pertains to whether venue is proper in this District.

## IV.    DISCUSSION

In response to the filing of Plaintiffs' operative SAC, Defendants filed a combined motion to (1) dismiss or transfer the case for lack of proper venue; (2) dismiss Plaintiffs' age discrimination claims pursuant to the first-to-file rule in light of an earlier filed case *Forsyth, et. al v. HP Inc., et al.*; (3) dismiss all claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6); and (4) strike Plaintiffs' class allegations on the grounds that the class definitions are temporally overbroad and exceed the applicable statute of limitations. *See generally* Mot.

The Court addresses Defendants' motion to dismiss or transfer for improper venue, and finds that it is dispositive. The Court then briefly addresses the remaining issues raised in Defendants' motion, consistent with the discussion on the record at the May 31, 2018 hearing.

### A.    Improper Venue

At the outset, Defendants move to dismiss this case without prejudice, or transfer it to the Northern District of Georgia, on the grounds that venue in the Northern District of California is improper under 42 U.S.C. § 2000e-5(f)(3). *See* Mot. at 10. Discrimination claims brought under Title VII are subject to special venue requirements, rather than governed by the general federal venue statute. 42 U.S.C. § 2000e-5(f)(3); *see also Johnson v. Payless Drug Stores Nw., Inc.*, 950

F.2d 586, 587 (9th Cir. 1991).[7]  The ADEA has no specific venue provision, and courts have held that "when a plaintiff brings a Title VII action, which is covered by Title VII's restrictive venue provision, as well as an action governed by the general venue provision, the narrower venue provision of § 2000e–5(f)(3) controls." *Walker v. U.S. Dep't of Commerce*, No. 1:11-CV-01195 AWI, 2012 WL 1424495, at *8 (E.D. Cal. Apr. 24, 2012) (citing *Dehaemers v. Wynne,* 522 F.Supp.2d 240, 249 (D.D.C. 2007)); *see also Johnson,* 950 F.2d at 587–88 ("[G]iven the conflict between the two statutes, well settled principles of statutory construction dictate that the later, specific venue provision (section 2000e–5(f)(3)) applies rather than the earlier, general venue provision (section 1391(b)).").  Plaintiffs agree that Title VII's special venue provision governs their ADEA claims as well. *See* Opp'n at 11 n.3.  Accordingly, the Court finds that Plaintiffs' claims in the SAC are subject to the venue requirements of Title VII.

Title VII's venue provision provides that an action "may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice[.]" 42 U.S.C.A. § 2000e-5(f)(3) (West).  "[I]f the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office." *Id.*  Title VII's broad venue provision only "seeks to limit venue to the judicial district concerned with the alleged discrimination." *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 504 (9th Cir. 2000) (internal quotation marks omitted).

Defendants argue that Plaintiffs have failed to carry their burden to establish that venue in the Northern District of California is proper for any of their claims. *See* Mot. at 11.  Applying

---

[7] Throughout their opposition, Plaintiffs argue that venue for Title VII claims is jointly governed by § 2000e-5(f)(3) and 28 U.S.C. § 1404(a).  Opp'n at 11-13.  Plaintiffs have conflated a motion to dismiss for improper venue pursuant to Rule 12(b)(3) and a motion to transfer venue based on convenience under 28 U.S.C. § 1404.  Accordingly, Plaintiffs' arguments directed toward the § 1404(a) factors are misplaced.  The Court need only turn to the § 1404 analysis in the event it finds that venue is proper in this District under Title VII.

Title VII's venue provision, Defendants argue that (1) Plaintiffs have not shown that Plaintiffs worked or would have worked in this District; (2) Plaintiffs' employment records are maintained electronically and are not located in this District; and (3) the alleged unlawful employment practices occurred outside of California. *Id.* at 11-14. The Court addresses Defendants' arguments directed at each prong of the venue provision in turn.

### 1. Where Aggrieved Person Would Have Worked

The Ninth Circuit has made clear that "the effect of Title VII's venue provision is to allow suit in the judicial district in which the plaintiff worked or would have worked." *Passantino*, 212 F.3d at 504-05. The Court finds that the allegations in the SAC and the evidence provided by Defendants make clear that none of the named Plaintiffs worked for, or would have worked for, either Defendant in California. Mr. Enoh worked for HPE in Maryland. *See* SAC ¶¶ 6; Beene Decl. ¶ 3. Mr. Jackson worked for—and Mr. Murrell currently works for—HP Inc. in Georgia. SAC ¶¶ 7, 9; *see also* Ortolani Decl. ¶¶ 3, 5. Mr. Mobley worked as an independent contractor at HPE in Georgia, and Defendants argue that he alleges no facts to demonstrate that he would have worked for either Defendant in California. *See* Mot. at 12.

Plaintiffs concede that none of the named Plaintiffs live or work in this District. Rather, Plaintiffs argue that whether a plaintiff lives or works within a district in not dispositive of venue, and direct their arguments at the remaining prongs of § 2000e-5(f)(3). *See* Opp'n at 14 (citing *Richardson v. Alabama State Bd. of Educ.*, 935 F.2d 1240, 1248 (11th Cir. 1991). Accordingly, the Court finds that Plaintiffs have not shown that venue is proper in the Northern District of California based on where the aggrieved person would have worked but for the alleged unlawful employment practice.

### 2. Where Employment Records are Maintained and Administered

Venue under Title VII is also proper in the judicial district in which the employment records relevant to an alleged discriminatory practice are maintained and administered. *See* 42 U.S.C.A. § 2000e-5(f)(3). Plaintiffs allege that "HP maintains personnel records" in this District and "the persons responsible for overseeing the human resources function are here." SAC ¶ 5. However, Defendants have presented uncontroverted evidence that both HP Inc. and HPE

maintain their employment records electronically, and therefore the employment records of Plaintiffs Jackson, Murrell, and Enoh and any applicant records of Mr. Mobley are maintained electronically and are not physically located in any particular state, including California. *See* Ortolani Decl. ¶ 8; Beene Decl. ¶ 7.

Plaintiffs argue that even if their employment records are electronically accessible in multiple districts, the Northern District of California is the proper venue under 42 U.S.C. § 2000e-5(f)(3). Opp'n at 16. The Court disagrees. Mere access to electronic records is not sufficient to establish venue. *See Kim v. McHugh*, No. 13-00616 JMS-KSC, 2014 WL 1580614, at *3 (D. Haw. April. 18, 2014) ("the mere electronic accessibility of the 'master set' of records from other districts does not provide an adequate basis for venue.") This Court is in complete agreement with the *McHugh* court, which explained: "given that electronic records are accessible anywhere, to accept Plaintiff's proposition would mean that she could bring her action in *any* district she sees fit, rendering § 2000e–5(f)(3) meaningless. No court has accepted such a broad interpretation of § 2000e–5(f)(3), and this court rejects it as well. The court therefore concludes that the second prong of § 2000e–5(f)(3) does not apply." 2014 WL 1580614, at *3.

Rather, when employment records are maintained and administered electronically, courts have held that the location of the server establishes the location of the records under section 2000e-5(f)(3). In *Gadson v. United Airlines, Inc.,* the plaintiff argued that her employment records were electronically stored in United's software program, which is hosted by Oracle, a California company. No. 15–cv–00460–VC, 2015 WL 3372265, *2 (N.D. Cal. May 22, 2015). Thus, the plaintiff argued that the IP address connected back to Redwood Shores, California, where Oracle is located. *Id.* The court rejected this argument and clarified that § 2000e–5(f)(3) provides that the action may be brought where the relevant records are "maintained and administered," not where the IP address for the server is located. *Id.* The court granted United's motion to transfer, based in part on evidence showing that the records at issue were stored on a sever outside of Chicago. *Id.*; *accord Cole v. Boeing Co.*, 901 F. Supp. 2d 47, 52 (D.D.C. 2012) (finding that venue in Washington, D.C. was improper where electronic records were maintained and administered on a server in Missouri).

Here, Defendants provide evidence that the employment records relevant to Plaintiffs' terminations, hiring, and promotion decisions are "maintained and administered" electronically on servers located in Texas and Oregon. *See* Declaration of Vidyanand Sakthi ("Sakthi Decl.") ¶¶ 3-6, ECF 52-2; Suppl. Beene Decl. ¶¶ 3-7, ECF 52-1; *see also Kendrick v. Potter*, No. 06–122, 2007 WL 2071670, *3 (D.D.C. July 16, 2007) ("Declarations of human resource officers and employers are sufficient to establish where the employment records are maintained and administered"). Moreover, Plaintiffs provide no case to support their argument that the location of an employer's human resources function renders venue proper under section 2000e-5(f)(3). Nor is the Court persuaded that unspecified "policies and procedures" created and maintained in this District are sufficient to support venue under this prong of the statute.

Ultimately, Plaintiffs' allegations in support of venue under the "employment records" prong of Title VII's venue provision—such as the location of the human resources function and that employment records, policies, and procedures were created and maintained in the Northern District of California—amount to nothing more than an assertion that HP Inc. and HPE are headquartered in this District. *See* Mot. at 13-14. Other district courts have concluded that an employer's headquarters in a district is not sufficient on its own to establish proper venue under Title VII. *See Amirmokri v. Abraham*, 217 F. Supp. 2d 88, 90 (D.D.C. 2002). Below, the Court considers whether the alleged "overarching plan" to get rid of older workers, which Plaintiffs allege originated at Defendants' headquarters in Palo Alto, supports venue in this District.

For the foregoing reasons, Plaintiffs have not established that venue is proper in the Northern District of California based on where the employment records are maintained and administered. *See* § 2000e-5(f)(3).

### 3. Where Unlawful Employment Practice is Alleged to Have Been Committed

The crux of Defendants' motion to dismiss for improper venue comes down to whether Plaintiffs have shown that the employment decisions involving Plaintiffs were made in this District. Although the Court addresses it last, the first prong of Title VII's venue statute provides that an action "may be brought in any judicial district in the State in which the unlawful

15

employment practice is alleged to have been committed." § 2000e-5(f)(3). In *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, the Ninth Circuit considered whether this first possible basis for venue under Title VII was satisfied, and held that "venue is proper in both the forum where the employment decision is made and the forum in which that decision is implemented or its effects are felt." 212 F.3d at 506.

Relying on *Passantino*, Plaintiffs argue that Hewlett-Packard's Workforce Reduction Plan and Meg Whitman's public statements regarding a desire for a "pyramid" structure with a younger workforce support venue in this District. Opp'n at 15. Plaintiffs argue that this evidence satisfies their burden to show that Defendants' employment decisions to lay off older workers were made by leadership in Palo Alto. *Id.* The record indicates that the Workforce Reduction Plan originated in May 2012, and on several occasions thereafter, Meg Whitman publicly expressed Defendants' desire to make their workforce younger by ensuring they had: "a labor pyramid with lots of young people coming in right out of college and graduate school and early in their careers." Exh. 9 to Plaintiffs' Request for Judicial Notice, ECF 53-9. According to Plaintiffs, this "overarching plan to get rid of older workers" was made in Palo Alto and the effects of its implementation were felt nationwide, including by Mr. Enoh in Maryland and Mr. Jackson in Georgia. Opp'n at 15.

But the circumstances in *Passantino* are markedly different from those presented here. In *Passantino*, the plaintiff sued her former employer in the Western District of Washington for failure to promote her in retaliation for her complaints of sex discrimination. 212 F.3d at 499. The plaintiff also worked in that district. *Id.* The employer moved for a change of venue to New Jersey, arguing that venue was improper in Washington because the decision not to promote the plaintiff occurred in New Jersey. *Id.* at 504. The Ninth Circuit affirmed the district court's denial of the motion to transfer, interpreting the first prong of Title VII's venue provision to mean that "venue should be found where the effect of the unlawful employment practice is felt: where the plaintiff works, and the decision to engage in that practice is implemented." *Id.* at 505.

When the holding of *Passantino* is considered in context, it becomes clear that the Ninth Circuit was considering whether venue under Title VII is proper in the district where the plaintiff actually worked. In stark contrast to this case, both sides in *Passantino* accepted that venue was

16

proper where the employment decisions were made. The dispute in *Passantino* centered on the employer's argument that venue is *only proper* in a failure to promote case where the decision to commit the unlawful employment practice was made. *Id.* at 505. The Ninth Circuit rejected that argument outright. *Id.* ("Had Passantino been wrongfully discharged or subjected to a hostile work environment, she could have sued in the district in which she worked. Nothing in the text or history of the statute's venue provision suggests that a different rule should apply in failure-to-promote cases.") The Ninth Circuit further noted that "Title VII's venue provision obviously contemplates the possibility that several districts could provide an appropriate venue for the same action," and concluded that venue was proper in both Washington and New Jersey. *Id.* at 506. Accordingly, *Passantino* stands for the proposition that Title VII plaintiffs feel the effects of their injuries—even if the employment decisions are made elsewhere—in the District where they actually worked. *Id.* 505-06 (holding that "venue is proper in both the forum where the employment decision is made and the forum in which that decision is implemented or its effects are felt.")

Here, it is undisputed that none of the Plaintiffs or their direct managers worked for Defendants in this District and none of the specific decisions regarding hiring, lay-offs, and promotions occurred in this District. Rather, Plaintiffs hang their hats on the "overarching" Workforce Reduction Plan and Meg Whitman's public comments to analysts regarding Defendants' desire for a younger workforce, which Plaintiffs argue was a "directive" to managers in other locations to make their teams younger. *See, e.g.*, Opp'n at 15-16. In essence, Plaintiffs argue that Defendants' senior leadership, including Meg Whitman, *made* the alleged discriminatory plan in Palo Alto, which was *implemented* by managers in Georgia and Maryland who terminated Mr. Enoh and Mr. Jackson. *See* May 31, 2018 Hearing Transcript at 6:3-19 ("[Ms. Whitman] didn't say fire Mr. Enoh or fire Mr. Jackson, but she sent that directive out, and [the managers] have been following that directive from 2012 to 2017.")

Based on the record before the Court, Plaintiffs have failed to establish that venue is proper in the Northern District of California. Other than *Passantino*, Plaintiffs provide no authority that comes close to establishing that a generalized policy to reduce the workforce coupled with alleged

1    "directives" from senior leadership emanating from an employer's headquarters establishes venue

2    under the first prong of § 2000e-5(f)(3).[8]  For the reasons discussed above, *Passantino* certainly

3    does not go so far.

4           Defendants argue that even if they are headquartered in this District and Plaintiffs can

5    show that upper-level employment decisions not specific to any Plaintiff were made at those

6    headquarters, venue is not proper under the first prong.  *See* Mot. at 12.  Rather, Defendants argue

7    that the alleged unlawful employment practices in this case are the termination decisions and the

8    alleged failure to hire and failure to promote, which the evidence shows were made and

9    implemented by Plaintiffs' managers in Georgia and Maryland, with the effects felt by Plaintiffs in

10   their home states.  *See* Reply at 2.  The Court agrees that Plaintiffs have failed to meet their burden

11   of showing that venue is proper in the Northern District of California.  *See Piedmont Label*

12   *Co.,* 598 F.2d at 496.  Even crediting Plaintiffs' evidence of a high-level Workforce Reduction

13   Plan in place at HP since 2012 and Ms. Whitman's startling comments to analysts regarding the

14   desire for a younger workforce, nothing in the SAC or in the record before the Court links

15   Plaintiffs' terminations to any such plan or comments.  The only reasonable conclusion to be

16   drawn from the record is that the decisions to terminate Plaintiffs were made and implemented by

17   managers outside of this District, the effects of which were felt outside of this District.

18           Defendants rely on *Slaby v. Holder,* which this Court finds persuasive and directly on

19   point.  901 F.Supp.2d 129 (D.D.C. 2012).  In *Slaby*, the plaintiff brought a disability

20   discrimination claim against the FBI under the Rehabilitation Act of 1973, whose venue is also

21   governed by Title VII's venue provision.  901 F.Supp.2d at 133.  The plaintiff argued that venue

22   was proper in Washington, D.C. because "the decisions about [the plaintiff's] future were made at

23   FBI headquarters in Washington, D.C.," and headquarters were consulted on or ultimately

24   approved the decision by Quantico training staff to remove the plaintiff as a Special Agent.  *Id*. at

25   133.  Despite allegations of involvement from FBI headquarters in the decision-making process,

26

27   _____

     [8] Moreover, Defendants persuasively argued at the hearing that although there is evidence that Ms.
     Whitman made the alleged public statements to analysts, there is no evidence that any manager
28   employed by Defendants—including Plaintiffs' managers in particular—heard her comments or
     perceived them to be directives to make employment decisions based on them.

the *Slaby* court found that venue in Washington, D.C. was not a proper venue as the location "in which the unlawful employment practice is alleged to have been committed." *Id.* Instead, the *Slaby* court found that Quantico, Virginia, was the location where the plaintiff alleged that discriminatory employment practices occurred, and the court transferred the case to the Eastern District of Virginia. *Id.* [9]

*Slaby* involved even more of a connection to the organization's headquarters than those present here. In *Slaby*, Quantico personnel actually told the plaintiff that FBI headquarters was making decisions about his employment status. *Id.* at 133. No such allegations are present in this case, and Plaintiffs do not provide a shred of evidence or even an allegation on information and belief that managers were aware of Ms. Whitman's comments and perceived them to be directives to terminate Plaintiffs Enoh and Jackson in favor of younger workers. Accordingly, Plaintiffs have not demonstrated that the underlying unlawful employment decisions were made in the Northern District of California. *See Slaby*, 901 F. Supp. 2d at 134; *see also Robinson v. Potter*, No. 04–cv–0890, 2005 WL 1151429, at *4 (D.D.C. May 16, 2005) (finding that "[i]f the court were to interpret actions…of an administrative agency as decisions determined at the agency's headquarters then a plaintiff would always be able [to] establish venue wherever the principal office is located. Even a cursory review of 42 U.S.C. § 2000e-5(f)(3) reveals that Congress did not intend this; the statute expressly limits the use of the principal office for establishing venue to only situations where a defendant may not be found within the judicial district that is the locus of the alleged discrimination.")

Other district courts have similarly determined that alleged companywide discriminatory policies emanating from corporate headquarters do not make venue proper in the location of the company's headquarters. *See Ring v. Roto-Rooter Servs. Co.*, No. 1:10-CV-179, 2010 WL

---

[9] The Court recognizes that *Slaby* is out-of-circuit and that court did not follow the interpretation of Title VII's venue provision set forth in *Passantino*. However, the parties and the Court were unable to find any authority in the Ninth Circuit after *Passantino* that dealt with allegations of high level corporate directives and involvement from headquarters in alleged discrimination. As explained above, *Passantino* is factually dissimilar from this case and its focus was on whether venue was proper in the district where an employee actually worked. This Court is not persuaded that it should be the first to stretch *Passantino*'s holding to the circumstances alleged here, particularly in light of *Slaby* and other district courts' rejection of Plaintiffs' line of argument.

3825390, at *5 (S.D. Ohio Sept. 28, 2010) (holding that the plaintiff's "allegations that her St. Louis supervisors were following a companywide discriminatory policy emanating from headquarters in Cincinnati does not make venue proper in this District."); *see also Cook v. UBS Fin. Servs., Inc.,* No. 05 Civ. 8842, 2006 WL 760284, at *3–4 (S.D.N.Y. Mar. 21, 2006) (dismissing action for improper venue where plaintiffs alleged that the company's New York headquarters approved broad-based personnel policies, but the specific personnel decisions impacting the plaintiff occurred in Maryland); *Darby v. U.S. Dep't of En.,* 231 F.Supp.2d 274, 277 (D.D.C. 2002). These district courts rejected arguments similar to those advanced by Plaintiffs here, and found that venue was proper in the district where the employees worked because that is where the specific employment decisions impacting the plaintiff were made. Plaintiffs do not cite any authority that counters the reasoning in these cases, and Plaintiffs' brief attempt to distinguish *Slaby* is entirely unpersuasive in light of the Court's reading of *Passantino*. *See* Opp'n at 16.

For these reasons, the Court finds that venue is improper in the Northern District of California under Title VII's venue provision allowing a plaintiff to bring an action where "the unlawful employment practice is alleged to have been committed." § 2000e-5(f)(3). The challenged employment decisions based on alleged age discrimination were made and implemented by Plaintiffs' managers in Maryland and Georgia, and the effects of those actions were felt by Plaintiffs Enoh and Jackson in Maryland and Georgia, respectively. *See Passantino*, 212 F.3d at 506 ("Thus, we hold that venue is proper in both the forum where the employment decision is made and the forum in which that decision is implemented or its effects are felt.") Ms. Whitman's comments explaining the Workforce Reduction Plan do not suffice to meet Plaintiffs' burden to show that the underlying employment decisions were made in this District, or that the managers made the challenged decisions based on directives emanating from this District.[10]

---

[10] As discussed at the hearing, the Court finds that the only claims that could possibly support venue in this District are Plaintiffs' age discrimination claims based on the reduction in force terminations. Plaintiffs put forth no independent allegations, evidence, or argument to support venue in California for the race discrimination claims or remaining age discrimination claims.

### 4. Dismiss or Transfer

For the foregoing reasons, the Court finds that venue is not proper in the Northern District of California under any of the prongs set forth in § 2000e-5(f)(3). Therefore, the Court may either dismiss the case or transfer it to a proper venue "if it be in the interest of justice." *See* 28 U.S.C § 1406(a); *see also King v. Russell,* 963 F.2d 1301, 1304 (9th Cir. 1992) (noting that the court has discretion in determining whether to transfer or dismiss an action for improper venue).[11]

Defendants request that the Court dismiss the case, or in the alternative, transfer the case to the Northern District of Georgia, where three of the Plaintiffs lived and worked. Mot. at 3. At the May 31, 2018 hearing, Plaintiffs indicated that it is not clear where venue should be, and the Court agrees that venue could be proper in several districts. Having considered the circumstances of this case and the positions of the parties, the Court finds that the interests of justice are best served by dismissing Plaintiffs' claims without prejudice to re-filing in a district that satisfies the requirements of § 2000e-5(f)(3).

### B. Remaining Issues

In addition to their motion to dismiss for improper venue, Defendants move to (1) dismiss Plaintiffs' ADEA claims pursuant to the first-to-file rule; (2) dismiss all claims pursuant to Rules 12(b)(1) for lack of standing and Rule 12(b)(6) for failure to state a claim; and (3) move to strike Plaintiffs' class allegations on the grounds that the class definitions are temporally overbroad with respect to the applicable statute of limitations. *See* Mot. at 15-24. At the May 31, 2018 hearing, Plaintiffs requested that this Court rule on the adequacy of their pleadings even if the Court determined that venue was not proper in this District. *See* May 31, 2018 Hearing Transcript at 27:19-28:6. Defendants argued that if venue is not proper in this District then the appropriate course of action is for this Court to refrain from ruling on the remainder of the motion to dismiss and allow the transferee court to deal with the remaining issues. *Id.* at 14:6-10.

As discussed above, this Court will not transfer this action but rather dismisses Plaintiffs' claims without prejudice to filing the action in a district where venue is proper. Accordingly, the

---

[11] In light of its conclusion that venue is improper, the Court does not reach Plaintiffs' § 1404 arguments.

Court addresses additional deficiencies in the SAC that warrant dismissal of Plaintiffs' claims with leave to amend, and directs Plaintiffs to address such deficiencies prior to re-filing this case in another district.[12]

First, although Plaintiffs allege that Defendants became two separate entities in November 2015, the SAC fails to plead any facts specific to each entity. SAC ¶ 11. By conflating HP Inc. and HPE without regard for which entity employed each Plaintiff or bears responsibility for the challenged employment decisions, Plaintiffs have failed to state a plausible claim for race and age discrimination against HP Inc. and HPE, as the Court cannot "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Without identifying which entity employed Plaintiffs or considered their applications for employment, Plaintiffs have not established that they have standing to sue either HP Inc. or HPE.

The Court also finds that Plaintiffs' disparate impact allegations against Defendants are insufficient. Although a disparate impact plaintiff, unlike a plaintiff proceeding on a disparate treatment theory, may prevail on a discrimination claim without showing intentional discrimination, the Ninth Circuit has opined that "the requirements a disparate impact plaintiff must meet are in some respects more exacting than those of a disparate treatment case. A disparate impact plaintiff must not merely prove circumstances raising an inference of discriminatory impact; he must prove the discriminatory impact at issue." *Lowe v. City of Monrovia*, 775 F.2d 998, 1004 (9th Cir. 1985), *amended*, 784 F.2d 1407 (9th Cir. 1986) (citing *Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 482 (9th Cir. 1983). This is usually done by establishing "that an employment practice selects members of a protected class in a proportion smaller than their percentage in the pool of actual applicants." *Lowe*, 775 F.2d at 1004 (internal citations omitted).

"Identifying a specific practice is not a trivial burden in age discrimination cases alleging disparate impact." *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1114 (9th Cir. 2014) (quoting *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 101, 128 S. Ct. 2395, 2406, 171 L.

---

[12] The Court does not reach Defendants' motion to dismiss the ADEA claims pursuant to the first-to-file rule, which is more properly determined by the court that will oversee this case.

Ed. 2d 283 (2008). As the Ninth Circuit pointed out in *Stockwell*, "the first Supreme Court case to recognize the viability of a disparate-impact theory under the ADEA *rejected* the claim on the merits for 'failure to identify the specific practice being challenged,' among other shortcomings." 749 F.3d at 1114 (quoting *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005)). Moreover, "[p]laintiffs generally cannot attack an overall decisionmaking process in the disparate impact context, but must instead identify the particular element or practice within the process that causes an adverse impact." *Durante v. Qualcomm, Inc.*, 144 F. App'x 603, 606 (9th Cir. 2005) (quoting *Stout v. Potter*, 276 F.3d 1118, 1124 (9th Cir. 2002). Here, Plaintiffs do not plead and identify a facially neutral policy of selection criteria that had a disparate impact on older or African-American employees. The SAC's allegations that "HP allowed an overwhelmingly Caucasian group of selectors to use a 'hazy' selection process for its employment decisions," is too vague to support Plaintiffs' disparate impact claims. *See, e.g.*, SAC ¶¶ 2(b), 68, 91; *see Smith*, 544 U.S. at 241 ("[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact.")[13]

Plaintiffs also fail to explain how the adverse employment decisions complained of were the result of Defendants' alleged "hazy" selection process. To the extent Plaintiffs choose to proceed on their disparate impact claims, they must not only identify the specific neutral policy and selection criteria that had a disparate impact, but they must allege facts to show that the challenged policy played a role in the decision to terminate or fail to promote or hire them. Similarly, the SAC's allegation that a Workforce Reduction Plan existed without further factual detail requires amendment in order to proceed as the basis for disparate impact discrimination based on age.[14]

---

[13] Plaintiffs' allegations that Defendants utilized a "tap on the shoulder" approach to promote Caucasian employees also cannot support a disparate impact claim, as such a policy is not facially neutral by definition. SAC ¶¶ 2(c), 67. Accordingly, these allegations can only support Plaintiffs' claims for intentional race discrimination.

[14] As discussed above, Ms. Whitman's comments and other statements regarding Defendants' Workforce Reduction Plan are not alleged in the SAC. Although the Court considered these statements to determine whether venue is proper, the Court does not look outside the pleadings in determining the adequacy of Plaintiffs' claims. However, The Court considers such information to be a proffer of what Plaintiffs could amend to include as a factual basis for their claims.

Finally, Defendants move to strike Plaintiffs' class definition for their race discrimination claims as overly broad. *See* Mot. at 26. Under Rule 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f) is a vehicle by which to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney–Vinstein v. A.H. Robins Co., Inc.,* 697 F.2d 880, 885 (9th Cir.1983). A defendant may move to strike class actions prior to discovery where the complaint demonstrates a class action cannot be maintained on the facts alleged therein. *Sanders v. Apple, Inc.,* 672 F.Supp.2d 978, 990 (N.D. Cal. 2009).

Plaintiffs purport to represent a nationwide class of "all other similarly situated current, past, present, and future employees of HP who are African- American/black, who have been, continue to be, or in the future subject to one or more aspects of the systemic race discrimination described in this Complaint." SAC ¶ 23. Defendants point out that this class definition fails to comport with the statute of limitations applicable to race discrimination claims under Title VII and Section 1981. The named plaintiff in a Title VII class action "may represent only those similarly situated individuals who either have filed timely charges with the EEOC or who could have filed a timely charge on the same date as the named plaintiff." *Church v. Consol. Freightways, Inc.*, 137 F.R.D. 294, 309 (N.D. Cal. 1991). Claims of intentional discrimination under Section 1981 are subject to a limitations period of four (4) years. *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 845 (9th Cir. 2004).

The Court agrees with Defendants that Plaintiffs must amend their overbroad class definition for their race discrimination claims to exclude individuals who are barred by their failure to timely file a claim with the EEOC, or who suffered injuries outside of the four year statute of limitations period under Section 1981. Contrary to Plaintiffs' argument that motions to strike class allegations at the pleading stage are generally disfavored, the Court finds that imposing time limitations on the class definition at the outset of the litigation is necessary to protect Defendants from burdensome and unnecessary class discovery on barred claims and individuals. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly

encompassed within the named plaintiff's claim."); *see also Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1043 (N.D. Cal. 2014) ("Class allegations can be stricken at the pleading stage.")

## V.     ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' motion to dismiss this action for improper venue is GRANTED.  Defendants' remaining motion to dismiss and motion to strike are GRANTED IN PART WTIHOUT PREJUDICE in line with the discussion above and on the record at the May 31, 2018 hearing.

Plaintiffs' claims are DISMISSED WITHOUT PREJUDICE to re-filing this action in a District where venue is proper pursuant to 42 U.S.C. § 2000e-5(f)(3).

The Clerk shall close the file.


Dated: July 11, 2018

BETH LABSON FREEMAN
United States District Judge